**CAMP CONCRETE ROCK COMPANY, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 357.

United States District Court
S. D. Florida,
Ocala Division.

May 23, 1959.

Green & Bryant, Ocala, Fla., for plaintiff.

James L. Guilmartin, U. S. Atty., Miami, Fla., Edith House, Asst. U. S. Atty., Jacksonville, Fla., and Herbert L. Awe, Atty., Dept. of Justice, Washington, D. C., for the United States.

SIMPSON, District Judge.

This case was tried before the Court, without a jury, upon issues adequately set forth in the pre-trial order, which is incorporated herein by reference. In a considerable measure, the facts were stipulated. Since the other evidence at the trial consisted of the testimony of a managing officer of plaintiff, that of an officer of an affiliated company, and documentary exhibits (no live witnesses being called by the Government), the facts are not in serious dispute. Upon the stipulated facts, the evidence at the trial, and upon briefs and proposed findings submitted by the parties subsequent to the trial, the Court now makes the following

### Findings of Fact

1. The plaintiff is a corporation organized under the laws of the State of Florida, with principal place of business at Ocala, Florida.

2. During the years 1951, 1952 and 1953, the plaintiff was engaged in the business of mining and crushing stone. For each of these years, the plaintiff filed its federal corporation income tax return on Form 1120, United States Treasury Department.

3. The plaintiff filed its income tax return for the year 1951 on March 4, 1952, and, in that return, claimed a depletion deduction in the amount of $173,-117.43 and showed a tax due in the amount of $222,836.78. The taxpayer filed its first amended return for the year 1951 on June 3, 1952, and this return disclosed a claimed depletion deduction in the amount of $193,254.51, and tax due in the amount of $196,647.61.

On this second return, this depletion was computed as being 10% of the total gross income of the Florida Crushed Stone Company, which the plaintiff contended was its agent. The plaintiff filed another amended return for the year 1951 on August 3, 1953, in which it claimed a depletion deduction in the amount of $96,627.26 and a tax due in the amount of $274,809.58. On August 14, 1954, the taxpayer made an additional payment of tax in the amount of $84,610.33. The taxpayer filed a claim for refund for the year 1951 in the amount of $8,159.64 on January 4, 1956, and this claim was rejected by the Commissioner of Internal Revenue on September 24, 1956.

4. For the calendar year 1952, the taxpayer filed its income tax return on March 14, 1953. The petitioner filed an amended return for this year on August 3, 1953, which return disclosed a net income in the amount of $286,358.24 and tax due in the amount of $141,713.13. This tax was $50,875.22 more than that shown on the original return. The taxpayer paid $50,875.22 plus interest of $1,144.69, a total of $52,019.91, on August 13, 1953. On March 21, 1955, the plaintiff paid additional tax for the year 1952 in the amount of $7,587.64 plus interest of $754.50, or a total of $8,342.14. On January 4, 1956, the plaintiff filed a claim for refund in the amount of $7,-703.85, which claim was rejected on September 24, 1956.

5. For the taxable year 1953, the plaintiff filed its income tax return, Form 1120, on March 16, 1954. On May 26, 1955, the plaintiff paid additional tax in the amount of $14,899.27 plus interest of $896.40, a total of $15,795.67. The taxpayer filed a claim for refund, Form 843, in the amount of $10,252.50 on January 4, 1956, which claim was rejected by the Commissioner of Internal Revenue on September 24, 1956.

6. This action was commenced on March 1, 1957.

7. The Florida Crushed Stone Company sold all of plaintiff's products, mined natural limestone rock, and all the products of an independent third company producing the same commodity as Camp Concrete Rock Company, William P. Mc-Donald Company of Lakeland, Florida. Florida was owned one-half by Camp, one-half by McDonald, with each company having two members of a 4-member Board of Directors, and neither having control. Florida was also the sales representative for another concern, Victor Chemical Corporation, whose product, slag, was handled differently, both physically and on its books, than the products of Camp and McDonald.

8. Camp mined and stored its lime rock at its mine. Florida had no trucks, nor stockpiles of rock, and never received delivery. When an order was placed with Florida for rock, Camp or McDonald was notified, and the order filled by loading on railroad cars or trucks for delivery to the purchaser from Florida. The rock was shipped f. o. b. Camp's plant, the customer being shown on the bill of lading as consignee, Florida as consignor. The price paid Camp was based on the selling price by grade received by Florida. Florida collected from the customer and remitted to Camp, less Florida's agreed commission and selling costs. Payment was made to Camp by Florida regardless of collection from the customer. The commissions charged and collected in 1951, 1952 and 1953 were as follows:

| Selling Price | Income to Florida |
|---|---|
| $2.00 and over per ton | 20¢ per ton |
| Under $2.00 per ton | 15¢ per ton. |

There was no written agreement between the two companies, Camp and Florida, but the method of handling had remained unchanged for many years. The books of each company showed the lime rock sold by Camp, purchased by Florida. Each company's books showed accounts payable and accounts receivable of the other. Florida returned for federal income tax purposes and paid income tax upon the commissions earned on the sales of Camp's lime rock. Bad accounts were Florida's loss, not Camp's, and suit thereon, if any, was by Florida.

9. During the periods in question, the Florida Crushed Stone Company sent the plaintiff a statement each month advising the plaintiff of the money due it from the Florida Crushed Stone Company's sale of stone it had purchased from the plaintiff. This amount which was shown each month was due the plaintiff whether or not the Florida Crushed Stone Company was able to collect the amount due it from the purchaser of its stone.

This amount shown each month as due the plaintiff was always less than the full amount which the Florida Crushed Stone Company collected from the purchaser of the stone it sold.

The Florida Crushed Stone Company carries on all its business in its own name and not under the name of the plaintiff.

10. The plaintiff does not supervise the internal operations of the Florida Crushed Stone Company, nor does it control the price the Florida Crushed Stone Company may sell the stone for.

When the Florida Crushed Stone Company finds a purchaser, it orders stone from the plaintiff. The plaintiff does not agree to sell the stone to the Florida Crushed Stone Company's customer but only to the Florida Crushed Stone Company itself.

Conclusions of Law

1. This Court has jurisdiction of this action for income tax refund claimed, by virtue of Title 28 U.S.C. § 1346(a) (1).

2. The sole question involved is whether the Commissioner correctly computed and allowed the 5% depletion allowance to the plaintiff for the years 1951, 1952 and 1953. The Commissioner allowed the depletion allowance solely on the income received by Camp from Florida. The plaintiff taxpayer contends that the entire income received by Florida from its customers was subject to the 5% depletion allowance in favor of the taxpayer. The plaintiff has the burden of showing the incorrectness of the Commissioner's assessment. For reasons briefly indicated below, I conclude that the plaintiff has failed to meet this burden.

3. In order to recover, the plaintiff must establish that an agency relationship existed between it and Florida for the sale of the plaintiff's lime rock. The monthly statements of Florida to Camp stating amounts owed Camp gave rise to a debtor-creditor relationship and indicate that both parties treated and considered what occurred as an actual sale by Camp, and an actual purchase and re-sale by Florida.

4. The relationship between the two companies was that of vendor and vendee, and was not an agency relationship for federal income tax purposes. See National Carbide Corp. v. Commissioner, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779; Railway Express Agency v. Commissioner, 8 T.C. 991, affirmed, 2 Cir., 169 F.2d 193.

5. Sec. 114(b) (3) Internal Revenue Code of 1939, 26 U.S.C. § 114(b) (3), in using the term "income from the property" means *income to the taxpayer*. Here, even though there was an agency, plaintiff's only *income* was the amounts owed it by Florida Crushed Stone Company. Therefore, the gross income of plaintiff for depletion purposes (Sec. 23 (m) Internal Revenue Code of 1939, 26 U.S.C. § 23(m)) was not, as plaintiff contends (and has the burden of demonstrating) the gross income of Florida Crushed Stone Company, realized from its sales to customers. Rather, it was the amount Florida was obligated to pay to the plaintiff. (The plaintiff's books were kept on an accrual basis.)

6. The Commissioner's assessment and collection of taxes for the years in question, 1951, 1952 and 1953, being based upon the amounts Florida owed Camp, was legal and correct.

7. Judgment should be entered for the defendant, United States of America, dismissing plaintiff's suit with prejudice, on the merits, with the defendant being allowed judgment for its taxable costs.